**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HENRY MORGAN, SUSAN SMITH, CHARLES SMITH, LAURA SEALE, TERRI COGBURN, LAURA BAESEL, TONI HALE, KATHLEEN WALTON, and TERRY WARNER, | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3:23-CV-0697-K |
| LINCOLN NATIONAL CORPORATION D/B/A LINCOLN FINANCIAL GROUP, THE LINCOLN NATIONAL LIFE INSURANCE CO., LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, FMR LLC, and FIDELITY PRODUCT SERVICES LLC, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendants Lincoln National Corporation, The Lincoln National Life Insurance Company, and Lincoln Life & Annuity Company of New York's (collectively, "Lincoln") Motion to Dismiss (Doc. No. 12) and Brief in Support (Doc. No. 13) (together, "Lincoln's Motion to Dismiss"), Plaintiffs Henry Morgan, Susan Smith, Charles Smith, Laura Seale, Terri Cogburn, Laura Baesel, Toni Hale, Kathleen Walton, and Terry Warner's (collectively, "Plaintiffs") Response (Doc. No. 43), and Lincoln's Reply (Doc. No. 54). Also before the Court are Defendants Fidelity Product Services LLC and FMR LLC's (collectively, "Fidelity") Motion to Dismiss

(Doc. No. 15) and Brief in Support (Doc. No. 16) (together, "Fidelity's Motion to Dismiss"), Plaintiffs' Response (Doc. No. 44), and Fidelity's Reply (Doc. No. 55). Finally, before the Court are Plaintiffs' Motion to Strike (Doc. No. 41) and Lincoln's Response (Doc. No. 53). The Court has carefully considered all motions, responses, replies, applicable law, and relevant portions of the record. For the following reasons, the Court **GRANTS** Lincoln's Motion to Dismiss, **GRANTS** Fidelity's Motion to Dismiss for lack of personal jurisdiction, and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Strike.

## I. Facts and Procedural History

Unless otherwise noted, the following facts come from Plaintiffs' Petition, and the Court accepts the well-pleaded facts as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). In or around February 2020, Plaintiffs entered into fixed annuity contracts with Lincoln. Pls.' Pet. (Doc. No. 1-1) ¶ 21 (the "Petition") (all citations herein are to the ECF-assigned page number); Doc. No. 13 at 8, 11. A fixed indexed annuity is a type of fixed annuity that earns interest based on changes in a market index, which measures how the market performs. *Id.*

Plaintiffs purchased from Lincoln a type of fixed indexed annuity called the Lincoln OptiBlend product. Doc. No. 1-1 ¶¶ 22, 35. The Lincoln OptiBlend product allocates the annuity's principal to an account that is tied to the Fidelity AIM Dividend Index (the "Index"). *Id.* ¶ 21. Lincoln marketed the Index as blending "strong dividend stocks with treasuries" via a "dynamic" selection method. *Id.* ¶ 2. According to Lincoln's

marketing materials, the purpose of this blend is to provide "a benefit from market upside potential with less exposure to market volatility." *Id.* Lincoln also marketed hypothetical projections for the Index that indicated the Index could have returns over 6.00% even in a "down market." *Id.* ¶¶ 23–24. Plaintiffs allege that Lincoln also represented that the Index would always include an equity component of 125 dividend stocks. *Id.* ¶¶ 47, 52.

Plaintiffs allege that Lincoln marketed the OptiBlend product and Index "aggressively to [Lincoln's] agents, brokers, and customers" and that "Lincoln started a campaign of misrepresentation amongst its agents and brokers about the new 'Lincoln and Fidelity partnership' trading on both the reputation and the name of Fidelity." *Id.* ¶ 25. In particular, Plaintiffs note that one of Lincoln's marketing materials stated: "Give clients the power with new Lincoln and Fidelity partnership. If clients are looking to combine upside potential with less exposure to market ups and downs, they've come to the right partnership." *Id.* ¶ 26.

Plaintiffs claim they entered into these annuity contracts "on the prospect that there would be significant upside and zero downside." *Id.* ¶ 31. However, their prospects were short lived. In early 2020, the COVID pandemic caused sudden large losses to the stock markets. Doc. No. 16 at 12. In early 2021, Plaintiffs began receiving their annual statements for the annuity contracts, which revealed "very low to zero returns." Doc. No. 1-1 ¶ 32. Plaintiffs also allege that "Lincoln employee Christopher Kattmann, an internal marketing consultant, made several oral representations to

[Plaintiff] Henry Morgan and, on information and belief, made the same misrepresentations to other brokers, agents, and customers, that when the market was no longer in the bull direction a return would still be generated because of the dividend stock mix in the index." *Id.* ¶ 32.

Eventually, Plaintiffs, through Mr. Morgan, contacted Lincoln and asked for an explanation. *Id.* ¶ 33. Plaintiffs learned that "Fidelity moved *all* the funds that produced in the Index to treasury securities when the market collapsed in early March 2020. In other words, the index was shifted from a mix of dividend stocks and bonds" "to a 100% treasury security index." *Id.* ¶ 33 (citation modified). Furthermore, because the funds were "never moved back to a blend of divided stocks and bonds" "until later in 2021," Plaintiffs missed out on the market's spring 2020 rebound. *Id.* ¶ 34 (citation modified).

On February 22, 2023, Plaintiffs sued Lincoln and Fidelity (collectively, "Defendants") in Texas state court. *See generally id.* Plaintiffs allege Defendants are responsible for misrepresenting to consumers, agents, and brokers the terms and conditions of the Lincoln OptiBlend product and the 1-Year Fidelity AIM Dividend Participation account. *Id.* ¶ 35. Plaintiffs, seeking class certification, *see id.* ¶¶ 36–43, allege the following: (1) that Lincoln violated the Texas Deceptive Trade Practices Act ("DTPA") (Count I), *see id.* ¶¶ 44–50; (2) that Lincoln is liable for common law fraud (Count II), *id.* ¶¶ 51–53; (3) that Lincoln and Fidelity are liable for negligent misrepresentation (Count III), *id.* ¶¶ 54–57; and (4) that Fidelity is liable for aiding

and abetting fraud (Count IV), *id.* ¶¶ 58–61. Plaintiffs also allege that the discovery rule defers and fraudulent concealment tolls the limitations period, meaning their claims against Defendants are timely. *Id.* ¶ 62.

Lincoln removed this case to federal court, *see generally* Doc. No. 1, and both Defendants filed motions to dismiss. Fidelity moves to dismiss pursuant to Rule 12(b)(2)—arguing Plaintiffs cannot establish personal jurisdiction over Fidelity—and Rule 12(b)(6)—arguing Plaintiffs cannot state a claim against Fidelity. *See generally* Doc. No. 16. Lincoln moves under just Rule 12(b)(6) for failure to state a claim. *See generally* Doc. No. 13. Plaintiffs separately move to strike portions of the appendix attached to Lincoln's Motion to Dismiss. *See generally* Doc. No. 41. The parties have fully briefed Fidelity's Motion to Dismiss, Lincoln's Motion to Dismiss, and the Motion to Strike. The motions are now ripe for review.

## II. Legal Standards

### A. Rule 12(b)(2) Motion to Dismiss

Under Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Whether personal jurisdiction can be exercised over a defendant is a question of law." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 528–29 (5th Cir. 2014) (citing *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 652 (5th Cir. 2002)). When the Court rules without an evidentiary hearing, "the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101

(5th Cir. 2018) (citing *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002)). The Court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). But it need not "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The Court also "is not obligated to consult only the assertions in the plaintiff's complaint"; it "may consider the contents of the record at the time of the motion." *Sangha*, 882 F.3d at 101 (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)). And "although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Id.* at 101 (quoting *Paz*, 445 F.3d at 812) (citation modified).

**B. Rule 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider only "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must presume all well-pleaded facts in the plaintiff's complaint to be true and resolve

any ambiguities or doubts regarding the sufficiency of the claims in the plaintiff's favor. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The district court may also consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although not the same as a "probability requirement," facial plausibility calls for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). If a plaintiff pleads factual content that allows the Court to reasonably infer that the defendant is liable for the alleged misconduct, the claim has facial plausibility. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation modified).

## III. Application of the Law

Lincoln's Motion to Dismiss, Fidelity's Motion to Dismiss, and Plaintiffs' Motion to Strike raise overlapping issues. Rather than addressing each motion separately, the Court organizes its analysis by issue. The Court begins with personal jurisdiction, because it must determine whether it has jurisdiction over Fidelity before reaching the merits of any claim against it. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

### A. Personal Jurisdiction

In the Petition, Plaintiffs claim Fidelity is subject to personal jurisdiction in Texas because it "regularly does business in the State of Texas and has purposefully availed itself of the laws of the State of Texas." Doc. No. 1-1 ¶¶ 17–18. Fidelity challenges Plaintiffs' jurisdictional allegations and moves to dismiss pursuant to Rule 12(b)(2). Doc. No. 16 at 28–29. Fidelity argues that it has not engaged in any suit-related conduct in Texas or any conduct that reached into Texas or specifically targeted Texas. *Id*. In response, Plaintiffs argue that Fidelity established contacts with Texas by systematically serving the Texas market and placing its product into Texas's stream of commerce. Doc. No. 44 at 26–27. For the following reasons, the Court agrees with Fidelity and therefore **dismisses without prejudice** all claims against Fidelity. The Court also **denies** Plaintiffs' request for jurisdictional discovery; however, the Court **grants** Plaintiffs leave to amend their jurisdictional allegations.

"A federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Shambaugh & Son, L.P.*, 91 F.4th at 372 (quoting *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019)) (citation modified). Because Texas's long-arm statute "extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Id.*

Due process recognizes two kinds of personal jurisdiction: (1) general jurisdiction; and (2) specific jurisdiction. *Id.* "General personal jurisdiction applies only when a defendant is 'essentially at home'" in the forum state. *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)) (citation modified).

Neither FMR LLC nor Fidelity Product Services LLC is "essentially at home" in Texas. In the personal jurisdiction context, "the same test is used to determine whether a limited-liability company is subject to general jurisdiction as the one applicable to corporations." *CDC Real Estate Corp. v. La Biela, L.L.C.*, No. 24-50626, 2025 WL 2219009, at *2 (5th Cir. Aug. 5, 2025) (unpublished) (citation modified). Thus, an LLC is "essentially at home" in its state of organization and principal place of business. *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336–38 (5th Cir. 2020). As provided in the Bobby Barnes Declaration, FMR LLC is a Delaware LLC with its principal place of business in Boston, Massachusetts. Doc. No. 17 at 4. Fidelity Product Services LLC is also a Delaware LLC with its principal place of business in Boston,

Massachusetts. *Id.* Therefore, neither Fidelity defendant is "essentially at home" in Texas.

Because Plaintiffs cannot establish general jurisdiction, the Court must determine whether it has specific personal jurisdiction over Fidelity. The Fifth Circuit applies a three-step test for determining specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Shambaugh & Son, L.P.*, 91 F.4th at 372 (quoting *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020)). If the plaintiff establishes the first two steps, the burden shifts to the defendant to negate the third. *Id.* (citing *E. Concrete Materials, Inc.*, 948 F.3d at 296).

Plaintiffs fail at step one because they have not made a prima facie showing that Fidelity purposely directed its activities toward Texas or purposefully availed itself of the privileges of conducting activities there. The Court reaches this conclusion for two reasons. First, Plaintiffs' jurisdictional allegations are conclusory. The Court must take uncontroverted allegations in the Petition as true, *see Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019), but it need not "credit conclusory allegations, even if uncontroverted," *Panda Brandywine Corp.*, 253 F.3d at 868–69 (citations omitted). Plaintiffs never amended or moved for leave to amend the state court petition after removal. And all the Petition says explicitly regarding jurisdiction is that Fidelity

"regularly does business in the State of Texas and has purposefully availed itself of the laws of the State of Texas." Doc. No. 1-1 ¶¶ 17–18. These are mere conclusions, and the Court need not accept them as true. Nor have Plaintiffs offered any evidence, such as a declaration or exhibit, to fill the gap.

Second, Plaintiffs' response does not cure these deficiencies. Although the Petition contains few jurisdictional facts, the parties fully briefed the issue following Fidelity's Rule 12(b)(2) motion. *See generally* Doc. Nos. 16 (12(b)(2) motion), 44 (response), 55 (reply). In their response, Plaintiffs raise two theories: stream of commerce and nationwide marketing *directed specifically at Texas*. Doc. No. 44 at 26–27. To be sure, the Court may look beyond the Petition and "consider the contents of the record at the time of the motion." *Paz*, 445 F.3d at 812 (citation modified). But Plaintiffs support their new theories with argument alone—no affidavit, declaration, or exhibit. *See Panda Brandywine*, 253 F.3d at 869 (affirming dismissal in a removed case where the plaintiffs' "sole evidence [was] their state court petition"); *Ecigrusa, LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 WL 1321573, at *8 (N.D. Tex. May 3, 2022) (rejecting a jurisdictional assertion because "the record does not include sufficient evidence" to support it). And even if the Court treated the response's assertions as allegations in the Petition, neither would establish personal jurisdiction.

Start with the stream of commerce. Plaintiffs argue that Fidelity falls under the Fifth Circuit's "expansive view" of the stream of commerce because Fidelity aggressively markets nationwide, "with the full knowledge and intent" that its products would be

"distributed nationally to customers buying annuities, including in Texas." Doc. No. 44 at 27. The Court disagrees. Courts have historically limited the "stream-of-commerce" theory to products-liability claims because such claims often involve unique marketing arrangements in which a product is marketed through a sales or distribution network designed to reach consumers nationwide, while the manufacturer derives financial benefits from those nationwide sales. *See, e.g.*, *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 373 (5th Cir. 2010) ("Unlike the cases where the stream of commerce theory has been applied, this is not a products liability case or similar case."). And while the Fifth Circuit has extended the theory beyond products liability, those cases "are closely related to products liability cases." *Id.* at 374 n.9. This is a fraud case, and the undersigned declines to push the boundaries here.

Plaintiffs' nationwide-marketing theory is also unsuccessful. Plaintiffs argue that Fidelity aggressively markets its products nationwide, directed torts at Texas residents, and knowingly targeted Texas. Doc. No. 44 at 27. Fidelity counters that Plaintiffs still identify no specific conduct by Fidelity directed at Texas and that "generic nationwide conduct" cannot establish personal jurisdiction. Doc. No. 58 at 2. The Court agrees with Fidelity in both regards. Neither the Petition nor the response clearly identifies anything Fidelity did that targeted Texas, as opposed to the country at large. And Fidelity's alleged knowledge that Texans would buy the annuities does not change the analysis, because "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Furthermore, Fidelity is correct

that recent Fifth Circuit caselaw has been critical of "nationwide" jurisdiction; in *Shambaugh*, the court rejected the argument that an insurer's nationwide coverage subjects it to specific jurisdiction wherever a covered event occurs. *Shambaugh & Son, L.P.*, 91 F.4th at 374 ("Accepting Shambaugh's argument would allow for specific personal jurisdiction against nationwide insurers virtually anywhere. Such 'would offend the traditional notions of fair play and substantial justice' by disregarding decades of well-developed law grounded in the Due Process Clause.").

For these reasons, Plaintiffs have not made a prima facie showing that Fidelity has minimum contacts with Texas, and the Court lacks personal jurisdiction over Fidelity. The Court therefore **grants** Fidelity's Motion to Dismiss pursuant to Rule 12(b)(2) and **dismisses without prejudice** all claims against Defendant FMR LLC and Defendant Fidelity Product Services LLC. Because the Court lacks jurisdiction over Fidelity, it does not reach Fidelity's Rule 12(b)(6) arguments, which the Court **denies as moot**.

In the alternative, Plaintiffs ask for jurisdictional discovery. Doc. No. 44 at 28. "This Court has broad discretion in deciding whether to allow a party to conduct jurisdictional discovery." *Graff v. Owings Gallery, Inc.*, No. 3:17-CV-0459-K, 2017 WL 2118346, at *6 (N.D. Tex. May 16, 2017) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)). "As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Plaintiffs' only argument for jurisdictional

discovery is that they need to better understand Fidelity's citizenship because an "LLC's citizenship is determined by the citizenship of all of its members." Doc. No. 44 at 28. However, as discussed above, an LLC is at home for general-jurisdiction purposes in its state of organization and its principal place of business, *see Frank*, 947 F.3d at 336–38, and Mr. Barnes's declaration established that FMR LLC and Fidelity Product Services LLC are Delaware LLCs with principal places of business in Boston, Massachusetts, Doc. No. 17 at 4. Therefore, Plaintiffs have not demonstrated the necessity of jurisdictional discovery, and the Court **denies** Plaintiffs' request.

The Court does, however, **grant** Plaintiffs leave to amend their Petition to add jurisdictional facts. Courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Although the Court concludes that the Petition's personal jurisdiction allegations are deficient, the undersigned cannot say with certainty that amendment would be futile. The theories in Plaintiffs' response fail, but Plaintiffs have not yet had an opportunity to plead jurisdictional facts under federal pleading standards. "There is a substantial difference in pleading standards between Federal and Texas Rules of Civil Procedure," *Dalton v. State Farm Lloyd's*, No. H-12-3004, 2013 WL 3157532, at *7 (S.D. Tex. June 19, 2013); "the Texas state court pleading standard is more relaxed than the federal standard," *Adam Tech. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, No. 3:12-CV-01706-P, 2012 WL 12886954, at *5 (N.D. Tex. Dec. 3, 2012) (Solis, J.)

(citation modified). Because Plaintiffs have not amended their Petition post-removal to comply with federal standards, the Court finds it appropriate to allow Plaintiffs the chance to amend their Petition. Plaintiffs may file an amended complaint repleading personal jurisdiction allegations **within 21 days of this Order.**

### B. Motion to Strike and Statute of Limitations

Having dismissed the claims against Fidelity, the Court turns now to the Motion to Strike and the limitations defenses. Both involve the same underlying issue: whether Plaintiffs' DTPA claims and negligent misrepresentation claim are time-barred. In its Motion, Lincoln argues the two-year limitations period governing Plaintiffs' DTPA and negligent misrepresentation claims bars both. Doc. No. 13 at 30. In Lincoln's view, the claims accrued when Plaintiffs signed their annuity applications, between November 30, 2019, and March 7, 2020—or, at the latest, when the annuity contracts issued, the last on May 5, 2020. *Id.* Because Plaintiffs did not sue until 2023, Lincoln contends that both claims are time-barred. *Id.* Plaintiffs' Motion to Strike challenges whether the Court may consider the annual statements in Lincoln's appendix. *See generally* Doc. No. 41.

For the following reasons, the Court concludes that the annual statements are not central to Plaintiffs' claims and therefore will not consider them in its 12(b)(6) analysis. The Court declines, however, to strike them from the record because the annual statements are not a pleading. *See* FED. R. CIV. P. 12(f). The Court therefore **grants in part** and **denies in part** the Motion to Strike. As to the limitations

argument, except for the Section 17.46(b)(5) claim based on the "partnership" representation, Plaintiffs' DTPA claims and negligent misrepresentation claim are time-barred because Plaintiffs did not file suit within two years and no tolling doctrine applies. The Court **dismisses with prejudice** all of Plaintiffs' remaining DTPA claims because amendment would be futile. However, the Court **dismisses without prejudice** and **grants leave to amend** Plaintiffs' negligent misrepresentation claim because whether fraudulent concealment tolls that claim depends on what Plaintiffs can plead.

### 1. Motion to Strike

On a Rule 12(b)(6) motion, a court generally may not look beyond the pleadings. *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Fifth Circuit recognizes "one limited exception" to that rule. *Scanlan*, 343 F.3d at 536. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are (1) referred to in the plaintiff's complaint, and (2) central to the plaintiff's claim. *Causey*, 394 F.3d at 288 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Plaintiffs here ask the Court to strike pages 093–101, 168–76, 246–53, 318–25, 387–94, 448–55, 521–28, 605–13, 676–81, and 733–40 of Lincoln's appendix. Doc.

No. 41 at 2. These pages include annual statements for 2020, 2021, and 2022, which Plaintiffs argue are not "central to Plaintiffs' claims" and are "not really referred to in the Petition in any meaningful sense." *Id.* Lincoln references these portions of the appendix in its Motion to argue that the limitations period has lapsed and tolling does not apply. Doc. No. 13 at 30–32. In the Motion to Strike, Plaintiffs concede that "the statements are referred to indirectly as a first indicator that Lincoln's misrepresentations and omissions may have injured the Plaintiffs," but they stress that they "do not plead when they received the [annual] statements, reviewed the [annual] statements, or otherwise came into knowledge of Lincoln's misconduct." Doc. No. 41 at 2 (citation modified).

Lincoln responds in two ways. First, it points to passages of the Petition that expressly refer to the annual statements. Doc. No. 53 at 3. Second, it argues that the annual statements are central to Plaintiffs' claims—and not simply the limitations question—because the annual statements are necessary to evaluate Plaintiffs' claimed injuries and damages and bear on whether Lincoln acted with the scienter required for Plaintiffs' fraud claim, their request for treble damages, and their other alleged damages. *Id.* at 2.

The Court agrees with Plaintiffs and finds that, while the Petition references the annual statements, the statements are not central to Plaintiffs' claims. First, the Petition clearly references the statements: the Petition alleges when "Plaintiffs began receiving their annual statements for their annuity contracts" and that those

"statements" showed "zero returns" "for the first time in early 2021." Doc. No. 1-1 ¶¶ 32–33.

However, second, the annual statements are not central to Plaintiffs' claims. Courts generally consider documents central "when they are necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011) (Lynn, J.). But "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.* (citing *Scanlan*, 343 F.3d at 536–37). Furthermore, a document is not central to the plaintiff's claim merely because it is central to the defendant's defense. *Scanlan*, 343 F.3d at 537; *accord Kaye*, 453 B.R. at 663–64.

Lincoln's arguments fail to establish that the annual statements are central to Plaintiffs' claims. Lincoln contends that the annual statements are necessary to establish Plaintiffs' injuries and damages and the scienter underlying Plaintiffs' fraud claim and request for treble damages. Doc. No. 13 at 30. But Plaintiffs' claims do not rest solely on the annual statements. They arise from representations Lincoln allegedly made when it sold the annuities, and no element of any claim requires proof of what the statements say. *See Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (DTPA); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (fraud and negligent misrepresentation elements). The statements may show when Plaintiffs first saw that the Index was producing "zero

or negligible returns," and they may well be evidence of Plaintiffs' alleged losses and scienter. But Plaintiffs may prove those losses and scienter by other means, and a document that is evidence of an element, even important evidence, is not for that reason alone central to the claim. *See Kaye*, 453 B.R. at 662–63.

Nor does the statements' relevance to Lincoln's limitations defense make them central. Lincoln offers them to show when Plaintiffs knew or should have known of the alleged misconduct. *See* Doc. No. 13 at 30–32. But a document that is central only to a defense is, at most, evidence for the defense, which *Scanlan* does not permit the Court to fold into the pleadings. *See Scanlan*, 343 F.3d at 537; *Kaye*, 453 B.R. at 663–64.

Because the annual statements are not central to Plaintiffs' claims, the Court will not treat them as part of the pleadings. And rather than convert Lincoln's Motion into one for summary judgment, the Court exercises its authority under Rule 12(d) to exclude them. *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (vacating a limitations dismissal where the district court considered materials outside the pleadings without converting the motion). To this extent, the Court **grants** the Motion to Strike: in deciding Lincoln's Motion, the Court will not consider pages 093–101, 168–75, 246–53, 318–25, 387–94, 448–55, 521–28, 605–13, 676–81, and 733–40 of Lincoln's appendix. The Court omits page 176, which Lincoln notes is not part of an annual statement. *See* Doc. No. 53 at 3.

The Court will not, however, strike the annual statements from the record. Rule 12(f) permits a court to "strike from a *pleading* an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f) (emphasis added). An appendix to a motion is not a pleading. *See* FED. R. CIV. P. 7(a); *Kaye*, 453 B.R. at 664. To the extent Plaintiffs ask the Court to strike the annual statements, the Court **denies** the Motion to Strike because the annual statements are not part of any pleading.

**2. Statute of Limitations**

Having resolved the Motion to Strike, the Court now turns to the limitations question. "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Ackerman v. Arkema Inc.*, 157 F.4th 715, 717 (5th Cir. 2025) (quoting *Stanley v. Morgan*, 120 F.4th 467, 470 (5th Cir. 2024)). "Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (citation modified). "It is the defendant's burden to establish the affirmative defense of limitations, including the accrual date of the plaintiff's claims." *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 688 (E.D. Tex. 2009) (citing *Cont'l Cas. Co. v. Dr. Pepper Bottling Co.*, 416 F. Supp. 2d 497, 506 (N.D. Tex. 2006) (Ramirez, J.)).

Plaintiffs' DTPA and negligent misrepresentation claims are subject to a two-year limitations period. *Whiddon*, 666 F. Supp. 2d at 689 ("The Texas statute of limitations for DTPA . . . claims is two years." (citing TEX. BUS. & COM. CODE

§ 17.565)); *Levels v. Merlino*, 969 F. Supp. 2d 704, 728–29 (N.D. Tex. 2013) (Lynn, J.) ("The statute of limitations is two years for a negligent misrepresentation claim." (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a))). "The limitations period for a cause of action begins to run when the claim accrues, the date of which is typically a question of law for the court to decide." *Riojas v. Nationwide Gen. Ins. Co.*, No. 1:18-CV-1127-RP, 2019 WL 1615413, at *3 (W.D. Tex. Apr. 16, 2019) (citation omitted); *accord TIG Ins. Co. v. Aon Re, Inc.*, No. 3:04-CV-1307-B, 2005 WL 3742818, at *7 (N.D. Tex. Nov. 7, 2005) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001)). The Court therefore turns to accrual.

**i. DTPA**

The DTPA supplies its own accrual rule. A DTPA action "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 57 (Tex. 2013) (quoting TEX. BUS. & COM. CODE § 17.565). The second clause codifies the discovery rule, which the Court addresses below. *See id.* ("In essence, the Legislature codified the discovery rule for DTPA claims."). The first clause sets the start date. The Texas Supreme Court has described it as "the rule that DTPA limitations begin to run when the injury occurs." *Id.* at 59.

**ii. Negligent Misrepresentation**

A negligent misrepresentation claim generally "accrues when a wrongful act causes some *legal injury*, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *TIG Ins. Co.*, 2005 WL 3742818, at *7 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)) (citation modified). Because negligent misrepresentation claims sound in negligence and not fraud, "the period of limitations begins to run from the commission of the negligent act, not from the date of the ascertainment of damages." *Id.* (citation omitted); *accord Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 703 (S.D. Tex. 2002) (Atlas, J.); *TIG Ins. Co.*, 2005 WL 3742818, at *8 (citing *Hunton*, 243 F. Supp. 2d at 703). Applying these rules to misrepresentations made to sell a financial product, courts hold that the claim accrues when the plaintiff buys the product, not when the product later fails to perform as represented. *See TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 356 (5th Cir. 2008) (negligent misrepresentation claim accrued when the contract the misrepresentations induced "became binding"); *Hunton*, 243 F. Supp. 2d at 703 (holding that the limitations period began to run for negligent misrepresentation claim when insurer issued the policy to the plaintiffs); *Rangel v. Progressive Cnty. Mut. Ins. Co.*, 333 S.W.3d 265, 268–69 (Tex. App.—El Paso 2010, pet. denied) (negligent misrepresentation and DTPA claims accrued on the date the plaintiffs purchased the policy).

**iii. The DTPA and negligent misrepresentation claims accrued no later than May 5, 2020.**

Plaintiffs' DTPA and negligent misrepresentation claims accrued no later than May 5, 2020. Plaintiffs allege that Lincoln's misrepresentations induced them to

purchase their annuities. Doc. No. 1-1 ¶ 31. Plaintiffs' respective annuity contract dates range from January 17, 2020, *see* Doc. No. 14-2 at 181 (Susan Smith contract), to May 5, 2020, *see* Doc. No. 14-2 at 97 (Charles Smith contract). These contract dates appear in portions of the appendix that the Motion to Strike does not challenge, and the Court may consider them because the Petition references the contracts, *see, e.g.*, Doc. No. 1-1 ¶¶ 1, 3, 21, 22, 31–32, 35 (referencing the annuity contracts), and the contracts are central to Plaintiffs' claims, *see Lone Star Fund V*, 594 F.3d at 387 (permitting consideration on Rule 12(b)(6) review of "any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint"); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 791 (N.D. Tex. 2009) (declining to strike insurance policies from defendant's appendix where plaintiffs' DTPA, Insurance Code, negligent misrepresentation, and fraud claims "originate[d] from the marketing and sale of the . . . policies," while striking other documents that were neither referenced in nor central to the complaint); *see also* Doc. No. 41 at 1 (asking only to strike the "printouts of annual statements for 2020, 2021, and 2022").

Plaintiffs' DTPA claims accrued when Plaintiffs contracted for their annuities. The DTPA's limitations period begins when the deceptive act occurs, which the Texas Supreme Court has described as when the injury occurs. *See* TEX. BUS. & COM. CODE § 17.565; *Gonzales*, 400 S.W.3d at 57, 59. Here, both occurred no later than when Plaintiffs entered their annuity contracts. The deceptive acts Plaintiffs allege are representations Lincoln made to sell the annuities, so they occurred before or at the

time of sale. Doc. No. 1-1 ¶ 47.a.i. (alleging misrepresentation "at issue"). And Plaintiffs suffered injury, if at all, when they contracted for the annuities in reliance on those representations. *See Rangel*, 333 S.W.3d at 268–69 (DTPA claims "based on the alleged misrepresentation also accrued" on the date the plaintiffs purchased the policy); *Wooten v. Nw. Mut. Life Ins. Co.*, No. 05-20-00798-CV, 2023 WL 4861777, at *3 (Tex. App.—Dallas July 31, 2023, no pet.) (mem. op.) (DTPA, Insurance Code, negligent misrepresentation, and fraud claims "accrued at the time [the insured] purchased each policy").

Plaintiffs' negligent misrepresentation claim accrued at the same time as the DTPA claims. A negligent misrepresentation claim requires that "the plaintiff suffer[] pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992). Plaintiffs relied on the alleged misrepresentations by buying the annuities, and they suffered loss at that time: on their theory, they paid for annuities that were not what Lincoln represented them to be. *See* Doc. No. 1-1 ¶ 35 (stating that the annuities "were falsely misrepresented to consumers"). Like the reinsurance treaty in *TIG*, the annuities were, as alleged, "impaired from the outset" by the misrepresentations that induced the purchases. 521 F.3d at 356. Every element of the claim therefore existed no later than the time of contract.

That Plaintiffs first saw zero returns in early 2021, Doc. No. 1-1 ¶¶ 32–33, does not change when their claims accrued. The zero returns were a consequence of the

injury Plaintiffs allegedly suffered when they bought the annuities, not a new injury. A claim accrues "even if all resulting damages have not yet occurred." *TIG Ins. Co.*, 2005 WL 3742818, at *7; *see Seger v. Branda*, No. 01-21-00224-CV, 2022 WL 17981559, at *6 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (claims based on representation that the insurer would use the life insurance policy's cash value, and its earnings on that value, to cover the premiums "accrued at the time he purchased his life insurance policy," even though the policy later required more premium than represented). When Plaintiffs learned of Lincoln's alleged misconduct bears only on whether the discovery rule or a tolling doctrine applies, which the Court addresses below.

The Court finds that, as a matter of law, Plaintiffs' DTPA and negligent misrepresentation claims accrued no later than May 5, 2020. Plaintiffs therefore had until May 5, 2022, at the latest, to bring claims for DTPA violations and negligent misrepresentation. They did not file suit until February 22, 2023. Doc. No. 1-1 at 1, 3. Plaintiffs' claims under the DTPA and for negligent misrepresentation are time-barred unless the discovery rule or fraudulent concealment applies.

### 3. Discovery Rule

In the Petition, Plaintiffs affirmatively state that the discovery rule and fraudulent concealment toll the statute of limitations in this case. Doc. No. 1-1 ¶ 62. The Court starts with the discovery rule. Plaintiffs claim that Defendants' misrepresentations "were inherently undiscoverable because the Defendants controlled

the access to information and were in a position of superior influence and knowledge." *Id.* Plaintiffs also allege that the misrepresentations were material and objectively verifiable. *Id.* Lincoln argues that the discovery rule does not apply here because it does not apply to investment decisions unless the investor exercised diligence rather than relying on oral or other misrepresentations. Doc. No. 13 at 30 (citing *Hunton*, 243 F. Supp. 2d at 701). For the following reasons, the Court concludes that the discovery rule does not defer any of Plaintiffs' claims except the Section 17.46(b)(5) claim to the extent it relies on the theory that Lincoln and Fidelity were partners.

The discovery rule is a limited exception to the statute of limitations. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). It does not toll limitations; rather, it defers accrual "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). "The determination of whether the discovery rule applies to a particular cause of action is a question of law." *TIG Ins. Co.*, 521 F.3d at 357 (citation omitted). "When asserting a limitations defense at the pleading stage, the defendant's burden to establish the accrual date includes negating the applicability of the discovery rule" as a matter of law. *Mathews v. Stryker Corp.*, No. 09-CV-2069-F, 2010 WL 11618059, at *3 (N.D. Tex. Apr. 22, 2010) (Furgeson, J.) (citing *Whiddon*, 666 F. Supp. 2d at 689).

**i. DTPA**

The discovery rule applies differently to DTPA and negligent misrepresentation claims, and the Court begins with the DTPA. As discussed above, Section 17.565 codifies the discovery rule for DTPA claims, so limitations begins to run when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE § 17.565; *see Gonzales*, 400 S.W.3d at 57. Accordingly, "once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *Gonzales*, 400 S.W.3d at 58 (citation modified).

Furthermore, in the context of financial instruments, "investment decisions inherently require that the investor exercise diligence rather than relying on any oral representations." *Hunton*, 243 F. Supp. 2d at 701 (quoting *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 520 (N.D. Tex. 2001) (Lindsay, J.)). "The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and the associated risks." *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 409 (5th Cir. 1998) (citation modified). Thus, the discovery rule will not defer a DTPA claim where the plaintiff failed to exercise reasonable diligence to discover the alleged falsity of the statements by reviewing relevant contractual materials. *See Hunton*, 243 F. Supp. 2d at 704 (applying reasonable diligence analysis to DTPA claim).

Plaintiffs here allege three fraudulent or misleading representations that form the basis of their DTPA claims: (1) that the 1-Year Fidelity AIM Dividend Participation account was the result of a "partnership" with Fidelity, allegedly in violation of Section 17.46(b)(5); (2) that Lincoln guaranteed the Index would have a positive return or an average annual return of approximately >6.00%, allegedly in violation of Sections 17.46(b)(12) and (b)(6); and (3) that the Index would always include an equity component of 125 stocks, allegedly in violation of Section 17.46(b)(5). *See generally* Doc. No. 1-1 ¶ 47. Plaintiffs also allege that these acts were unconscionable in violation of Section 17.50(a)(3). *Id.* The Court addresses whether the discovery rule applies to each in turn.

First, as to Plaintiffs' allegation that Lincoln misrepresented having a "partnership" with Fidelity in violation of Section 17.46(b)(5), Lincoln fails to negate the discovery rule as a matter of law. Section 17.46(b)(5) prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not. TEX. BUS. & COM. CODE § 17.46(b)(5). Plaintiffs argue that, by representing it had a partnership with Fidelity, Lincoln violated this provision. Doc. No. 1-1 ¶ 47. In response, Lincoln claims that the marketing document that refers to a "partnership" also "expressly states that Fidelity did not sponsor or endorse Lincoln's annuities" and "expressly disclosed that the Index was a licensed product of Fidelity that Lincoln did not manage or oversee." Doc. No.

13 at 20 (citing Doc. No. 14-3 at 71) (citation modified). Lincoln also claims that those same disclosures appeared in "every application Plaintiffs submitted, and every contract into which Plaintiffs entered." *Id.* (citing Doc. Nos. 14-1 at 11; 14-3 at 105, 366).

While these documents do contain disclaimers, the marketing materials referenced in the Petition prominently and unequivocally state: "Give clients the power with new Lincoln and Fidelity partnership. If clients are looking to combine upside potential with less exposure to market ups and downs, they've come to the right partnership." Doc. No. 14-3 at 71. Although other documents Plaintiffs received state that Fidelity did not "sponsor[]" or "endorse[]" Lincoln's annuities, *see generally* Doc. Nos. 14-1 at 11; 14-3 at 105, 366, those statements do not clearly contradict the general statement that Lincoln and Fidelity are "partners." The Court therefore concludes that Lincoln's prominent marketing of a partnership with Fidelity prevents Lincoln from negating the discovery rule as a matter of law. *See Abira Med. Labs., LLC v. Blue Cross & Blue Shield of Tex.*, No. 3:24-CV-2001-B, 2025 WL 790634, at *6 (N.D. Tex. Mar. 12, 2025).

Second, as to Plaintiffs' allegation that Lincoln violated Sections 17.46(b)(12) and (b)(6) by guaranteeing the Index's return would be positive and/or having an average annual return of approximately >6.00%, Lincoln has negated the discovery rule as a matter of law. Section 17.46(b)(12) prohibits representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve,

or which are prohibited by law. TEX. BUS. & COM. CODE § 17.46(b)(12). Section 17.46(b)(6) prohibits representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand. *Id.* § 17.46(b)(6). Plaintiffs argue that, by representing the Index would have a positive return and/or a return of approximately >6.00%, Lincoln violated both provisions. Doc. No. 1-1 ¶ 47. Lincoln again points to documents that it claims contradict Plaintiffs' allegations. *See generally* Doc. No. 13 at 20–21.

The Court here agrees with Lincoln. Unlike the partnership disclosure discussed above, the documents Plaintiffs signed and received when they bought their annuities directly contradicted the representation that the Index would have a positive return and/or a return of approximately >6.00%. Specifically, each Plaintiff signed an application acknowledging that "all payments and values provided by the contract, when based on the experience of the index Account, are not guaranteed as a dollar amount." *E.g.*, Doc. No. 14-1 at 8. In the same application, each Plaintiff acknowledged reading the Annuity Disclosure Statement, *see id.*, which explained that if the Index's "percentage change" was "negative," there "w[ould] not be any interest credited for the term," *id.* at 19. And the client illustrations quoted in the Petition stated in bold that "[h]ypothetical values are shown for illustrative purposes and are not guaranteed," *e.g.*, Doc. No. 14-2 at 356; *see* Doc. No. 1-1 ¶ 24, and themselves showed years in which the interest rate credited was 0%, *e.g.*, Doc. No. 14-1 at 362. These terms are clearly contrary to a representation guaranteeing that the Index would have a positive return

or an average annual return of >6.00%. *See Hunton*, 243 F. Supp. 2d at 702 n.27. Plaintiffs are charged with knowledge of these terms, *see Martinez Tapia*, 149 F.3d at 411; *Hunton*, 243 F. Supp. 2d at 706, so in the exercise of reasonable diligence they should have discovered that the representation was false when they bought their annuities, which was no later than the date of Plaintiffs' final contract: May 5, 2020. *See* Doc. No. 14-2 at 97 (Charles Smith contract).

Third, as to Plaintiffs' allegation that Lincoln again violated Section 17.46(b)(5) by claiming the Index would always include an equity component of 125 stocks, Lincoln has negated the discovery rule as a matter of law. Plaintiffs argue that Lincoln's marketing that the Index would include an equity component of 125 stocks violated Section 17.46(b)(5). Doc. No. 1-1 ¶ 47. Lincoln again argues that disclosures contradicted this representation. *See generally* Doc. No. 13 at 21–23.

The Court agrees with Lincoln. The flier on which Plaintiffs rely states that the Index included a "[s]tarting portfolio" of "about" 125 stocks plus a "[d]ynamic allocation" of Treasuries and indicates that the Index's allocation could change to "manage volatility." Doc. No. 14-3 at 69. Unlike the partnership disclosure, this disclosure expressly contradicts the representation that the Index would always include 125 stocks. Plaintiffs are therefore charged with knowledge of these terms, *see Martinez Tapia*, 149 F.3d at 411; *Hunton*, 243 F. Supp. 2d at 706, and in the exercise of reasonable diligence should have discovered the representation's falsity no later than

the date of Plaintiffs' final contract: May 5, 2020. *See* Doc. No. 14-2 at 97 (Charles Smith contract).

Finally, as to Plaintiffs' allegation that Lincoln's conduct was unconscionable, Lincoln has negated the discovery rule as a matter of law. Section 17.50(a)(3) allows a consumer to maintain an action where an unconscionable action or course of action was a producing cause of economic damages. TEX. BUS. & COM. CODE § 17.50(a)(3). Plaintiffs allege that the marketing and sale of the annuities was unconscionable as rolled out because Lincoln failed to properly disclose the Fidelity AIM methodology and marketed the product as being able to ensure a return even in down years. Doc. No. 1-1 ¶ 47. These allegations rest on the same theories discussed above. The Court has already concluded that Plaintiffs, in exercising reasonable diligence, should have discovered that the annuities did not guarantee a positive return and that the Index's composition could change. The Section 17.50(a)(3) claim therefore accrued no later than the date of Plaintiffs' final contract: May 5, 2020. *See* Doc. No. 14-2 at 97 (Charles Smith contract).

**ii. Negligent Misrepresentation**

The Court now turns to Plaintiffs' negligent misrepresentation claim. For this claim, courts apply a categorical approach and ask "whether the nature of the injury renders it inherently undiscoverable *and* objectively verifiable." *Ptasynski v. Shell W. E & P, Inc.*, No. 99-11049, 2002 WL 32881277, at *3 (5th Cir. Feb. 13, 2002) (unpublished) (citing *HECI*, 982 S.W.2d at 886). Dismissal under Rule 12(b)(6) is

appropriate where the injury was not inherently undiscoverable. *See Beavers*, 566 F.3d at 441 (affirming Rule 12(b)(6) dismissal because the injury was not inherently undiscoverable).

The Court finds that, as a matter of law, Lincoln has negated the discovery rule as to Plaintiffs' negligent misrepresentation claim, *see Abira Med. Labs.*, 2025 WL 790634, at *6, because Plaintiffs' injury is not inherently undiscoverable. The injury Plaintiffs allege is buying an annuity that was not what Lincoln represented it to be. *See generally* Doc. No. 1-1 ¶ 1. However, a purchaser exercising reasonable diligence can discover that type of injury by reading the contract and reviewing the statements the annuity generates. *See Beavers*, 566 F.3d at 440–41 (reduced dividends on life insurance policies were not inherently undiscoverable because policyholders "could have studied their policies, contacted MetLife," and inquired of regulators); *TIG Ins. Co.*, 521 F.3d at 358. While the Court does not consider the annual statements excluded by the Motion to Strike, Plaintiffs' allegations that zero returns appeared on their annual statements in early 2021, *see* Doc. No. 1-1 ¶¶ 32–33, within two years of every purchase, illustrate that this type of injury is not inherently undiscoverable. Thus, as a matter of law, Lincoln has negated the discovery rule as to Plaintiffs' negligent misrepresentation claim.

#### 4. Fraudulent Concealment

Having addressed the discovery rule, the Court turns to fraudulent concealment. Like the discovery rule, fraudulent concealment applies differently to DTPA and

negligent misrepresentation claims. The DTPA codified the fraudulent concealment rule; under it, limitations "may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action." *Gonzales*, 400 S.W.3d at 58 (quoting TEX. BUS. & COM. CODE § 17.565). This rule "forecloses the application of the common-law doctrine of fraudulent concealment to DTPA claims." *Id.* at 59.

For negligent misrepresentation, the common law fraudulent concealment doctrine applies. *See, e.g.*, *Gallier v. Woodbury Fin. Servs.*, 171 F. Supp. 3d 552, 563–64 (S.D. Tex. 2016) (applying common law rule to negligent misrepresentation). Under the common law rule, "a defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (citation modified). "A party asserting fraudulent concealment must establish an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Id.* (citation modified); *compare id.* (plaintiff's burden for fraudulent concealment), *with Abira Med. Labs.*, 2025 WL 790634, at *6 (defendant's burden for discovery rule at 12(b)(6) stage). "Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence," *BP Am. Prod. Co.*, 342 S.W.3d at 67 (citation omitted); thus, the same "reasonable diligence" analysis applies as under the discovery rule, *Bergeron v. Select Comfort Corp.*, No. A-15-

CV-00657-LY-ML, 2016 WL 155088, at *5 (W.D. Tex. Jan. 11, 2016) (Lane, M.J.) ("As with the discovery rule, fraudulent concealment tolls the running of limitations only until the fraud is discovered or could have been discovered with reasonable diligence.") (citation omitted), *report and recommendation adopted*, 2016 WL 4401313 (W.D. Tex. Feb. 24, 2016) (Yeakel, J.).

A plaintiff pleading fraudulent concealment must also satisfy Rule 9(b). *Stringer v. Remington Arms Co., LLC*, 52 F.4th 660, 662 (5th Cir. 2022) (citing *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. Unit B 1981)). Under that rule, "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* (citing FED. R. CIV. P. 9(b)). At a minimum, the plaintiff must set forth the "who, what, when, where, and how" of any alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron*, 417 F.3d 450, 453 (5th Cir. 2005).

As to Plaintiffs' DTPA claims, the Court need not determine whether Plaintiffs met the criteria set forth in Section 17.565 because a 180-day extension would still not save Plaintiffs' claims. As explained above, Plaintiffs' DTPA claims—other than the partnership-based Section 17.46(b)(5) claim—accrued no later than May 5, 2020. A 180-day extension would give Plaintiffs until November 1, 2022, to file suit. However, Plaintiffs did not file suit until February 22, 2023. Therefore, fraudulent concealment cannot save Plaintiffs' DTPA claims even if it applied.

The common law rule does not save the negligent misrepresentation claim, either. The Court concludes that Plaintiffs have not pled with particularity that Lincoln

knew Plaintiffs were in fact wronged and concealed that fact to deceive them. The Petition alleges only that "Defendants concealed the nature of the misrepresentations with the intent that the Plaintiffs not discover their misconduct." Doc. No. 1-1 ¶ 62. It does not allege the "who, what, when, where, and how" of that concealment. *See Bell Helicopter Textron*, 417 F.3d at 453. Plaintiffs' fraudulent concealment allegations do not satisfy Rule 9(b), and therefore do not toll Plaintiffs' negligent misrepresentation claim. However, because fraudulent concealment depends on what Plaintiffs plead pursuant to Rule 9(b), the Court **grants leave to amend**: Plaintiffs may file an amended complaint repleading their negligent misrepresentation claim **within 21 days of this Order**.

### 5. The discovery rule defers only one Section 17.46(b)(5) theory, and fraudulent concealment tolls no claim.

For clarity, the Court summarizes its conclusions under this Section III.B. as follows:

- Lincoln negated the discovery rule as to Plaintiffs' Section 17.46(b)(5) claim (Count I) to the extent it rests on the theory that the Index would always include an equity component of 125 stocks. Therefore, to the extent Plaintiffs' Section 17.46(b)(5) claim rests on that theory, it accrued no later than May 5, 2020. Plaintiffs did not file suit until February 22, 2023; thus, the claim is barred to the extent it rests on that theory. Fraudulent concealment is immaterial because it would extend the limitations period by only 180 days. To the extent Plaintiffs' Section 17.46(b)(5) claim rests on

the theory that the Index would always include an equity component of 125 stocks, the claim is **dismissed with prejudice**.

- Lincoln did not negate the discovery rule as to Plaintiffs' Section 17.46(b)(5) claim (Count I) to the extent it rests on the theory that Lincoln misrepresented having a "partnership" with Fidelity. Given Plaintiffs' allegation that the discovery rule deferred that claim until some point within the limitations period, Lincoln's limitations defense does not warrant dismissal at this stage. *See Schouest v. Medtronic, Inc.*, 13 F. Supp. 3d 692, 708–09 (S.D. Tex. 2014). To the extent Plaintiffs' Section 17.46(b)(5) claim rests on the theory that Lincoln misrepresented having a "partnership" with Fidelity, the claim **survives** Lincoln's limitations challenge.

- Lincoln negated the discovery rule as to Plaintiffs' Section 17.46(b)(6) claim (Count I). Therefore, the claim accrued no later than May 5, 2020. Plaintiffs did not file suit until February 22, 2023; thus, the claim is barred. Fraudulent concealment is immaterial because it would only extend the limitations period by 180 days. Therefore, Plaintiffs' Section 17.46(b)(6) claim is **dismissed with prejudice**.

- Lincoln negated the discovery rule as to Plaintiffs' Section 17.46(b)(12) claim (Count I). Therefore, the claim accrued no later than May 5, 2020. Plaintiffs did not file suit until February 22, 2023; thus, the claim is barred. Fraudulent concealment is immaterial because it would only extend the limitations period by 180 days. Therefore, Plaintiffs' Section 17.46(b)(12) claim is **dismissed with prejudice**.

- Lincoln negated the discovery rule as to Plaintiffs' Section 17.50(a)(3) claim (Count I). Therefore, the claim accrued no later than May 5, 2020. Plaintiffs did not file suit until February 22, 2023; thus, the claim is barred. Fraudulent concealment is immaterial because it would only extend the limitations period by 180 days. Therefore, Plaintiffs' Section 17.50(a)(3) claim is **dismissed <u>with</u> prejudice**.

- Lincoln negated the discovery rule as to Plaintiffs' negligent misrepresentation claim against Lincoln (Count III) and fraudulent concealment does not apply. Therefore, the claim accrued no later than May 5, 2020. Plaintiffs did not file suit until February 22, 2023; thus, the claim is barred. Plaintiffs' negligent misrepresentation claim is **dismissed <u>without</u> prejudice**. The Court also **grants leave to amend** that claim. "Dismissal for failure to comply with Rule 9(b) is almost always with leave to amend." *Summer*, 664 F.2d at 971 (citation modified). Because whether fraudulent concealment tolls the claim turns on whether Plaintiffs can plead it with the particularity Rule 9(b) requires, the Court finds it appropriate to allow amendment. Plaintiffs may file an amended complaint repleading their negligent misrepresentation claim **within 21 days of this Order**.

### C. Section 17.46(b)(5) Claim

Because the Court concludes that the limitations period does not bar the Section 17.46(b)(5) claim—to the extent it relies on the "partnership" theory—the Court must determine whether it survives Lincoln's remaining arguments. Lincoln additionally argues that Plaintiffs' DTPA claims fail because Plaintiffs are not "consumers" and

because Plaintiffs have not sufficiently pled their claim. *See* Doc. No. 13 at 24–26 (arguing Plaintiffs are not consumers), 28–30 (arguing Plaintiffs failed to plead any of their claims with particularity). Lincoln also argues that Plaintiffs fail to plausibly plead knowledge and intent, *id.* at 27–28, but the Court does not reach this argument because the undersigned concludes that Plaintiffs have not pled their Section 17.46(b)(5) claim with particularity.

**1. Plaintiffs are "consumers" under the DTPA.**

The Court starts with the argument that Plaintiffs' DTPA claims fail because Plaintiffs are not "consumers." *See generally* Doc. No. 13 at 24. Lincoln contends that annuities are not "goods or services" under the DTPA. *Id.* at 24–25. Plaintiffs respond that services in connection with financial transactions qualify. Doc. No. 43 at 35. The Court agrees with Plaintiffs.

"Only a 'consumer' can maintain a cause of action directly under the DTPA." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 386 (Tex. 2000). A consumer is an individual "who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4). "Services" are "work, labor, or service purchased or leased for use." *Id.* § 17.45(2). "A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant." *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex. 1985) (citation omitted). "Whether a party is a consumer under the DTPA is a question of law." *Hand v. Dean*

*Witter Reynolds Inc.*, 889 S.W.2d 483, 496 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

Buying an intangible, without more, does not make a plaintiff a consumer. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980) (loan of money); *Hand*, 889 S.W.2d at 498 (commodity option contract); *Canfield v. Bank One, Tex., N.A.*, 51 S.W.3d 828, 839 (Tex. App.—Texarkana 2001, no pet.) (certificate of deposit). However, a service that accompanies the intangible can confer consumer status. *Canfield*, 51 S.W.3d at 839. "When a transaction's central objective is the acquisition of an intangible, the collateral service must be an important objective of the transaction and not merely incidental." *Id.* And the plaintiff must complain about that service. *Id.* Neither the plaintiff in *Hand* nor the plaintiff in *Canfield* cleared that bar. In *Hand*, the plaintiff "did not complain about any collateral services," and the only service at issue, opening an account, was "merely ancillary" to her purchase of the option contract. 889 S.W.2d at 500. In *Canfield*, the plaintiff's complaint concerned the bank's distribution of the certificates of deposit, and the record was "void of any evidence of counseling, advice, or any other collateral services." 51 S.W.3d at 840.

The Court has found no decision of the Supreme Court of Texas or the Fifth Circuit deciding whether a person who buys an annuity is a consumer under the DTPA. The Court therefore must make an *Erie* guess, looking "first to those Texas Supreme Court cases that, while not deciding the issue, provide guidance as to how the Texas

Supreme Court would decide the question." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010).

An annuity is not a "good." *See* TEX. BUS. & COM. CODE § 17.45(1). But Plaintiffs did not buy a bare intangible like the certificate of deposit in *Canfield*. They bought annuities that Lincoln and Fidelity continued to manage and oversee after the sale. The Lincoln National Life Insurance Company issued the annuities, *see* Doc. No. 14-2 at 97, 181, and credited interest each term according to the Index's performance, *see* Doc. No. 14-1 at 19. Fidelity, in turn, managed the Index. Lincoln marketed the Index as blending dividend stocks and treasuries through a "dynamic" selection method, Doc. No. 1-1 ¶ 2, and when the market fell in March 2020, Fidelity "moved all the funds" in the Index "to treasury securities," *id.* ¶ 33 (emphasis omitted). Fidelity did not move them back until later in 2021. *Id.* ¶ 34. That ongoing work is "service . . . purchased . . . for use." TEX. BUS. & COM. CODE § 17.45(2).

That service was an important objective of the transaction, not an incidental one. Plaintiffs' returns depended on how partner Fidelity managed the Index and how partner Lincoln credited its performance. *See* Doc. No. 14-1 at 19; Doc. No. 1-1 ¶¶ 21, 33–34. Lincoln sold the product on that basis, marketing the Index's "dynamic" blend and the "new Lincoln and Fidelity partnership." Doc. No. 1-1 ¶¶ 2, 26. Plaintiffs bought the annuities "on the prospect that there would be significant upside and zero downside." *Id.* ¶ 31. It makes no difference that Plaintiffs contracted with Lincoln and

not Fidelity; consumer status turns on Plaintiffs' relationship to the transaction. *See Kennedy*, 689 S.W.2d at 893.

Plaintiffs also complain about that service. Their surviving Section 17.46(b)(5) claim rests on Lincoln's representation that a "Lincoln and Fidelity partnership" stood behind the product. Doc. No. 1-1 ¶¶ 25–26. That representation goes to who would manage Plaintiffs' annuities, which is the very service Plaintiffs acquired. *See Canfield*, 51 S.W.3d at 839.

Plaintiffs therefore have adequately pled that they are consumers under the DTPA. While the annuities themselves were not "goods," Lincoln's and Fidelity's ongoing management of the annuities after sale constituted a "service" under Section 17.45(2). The consumer-status requirement does not bar Plaintiffs' surviving Section 17.46(b)(5) claim.

**2. Particularity**

Lincoln also argues that Plaintiffs have not pled their DTPA claims with the particularity Rule 9(b) requires. *See generally* Doc. No. 13 at 28–30. The Court agrees with Lincoln that Plaintiffs' Section 17.46(b)(5) claim does not satisfy Rule 9(b).

Rule 9(b) "applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). It reaches "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998). Courts

in this district therefore hold that "[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." *Berry*, 608 F. Supp. 2d at 800 (citation omitted). Under Rule 9(b), the plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *Bell Helicopter Textron*, 417 F.3d at 453.

Rule 9(b) applies to Plaintiffs' Section 17.46(b)(5) claim. That claim rests on the same "partnership" representation as Plaintiffs' fraud claim, and Plaintiffs describe the representation as part of Lincoln's "campaign of misrepresentation." Doc. No. 1-1 ¶¶ 25, 47, 52. The gravamen of the claim is fraud. *See Frith*, 9 F. Supp. 2d at 742.

Plaintiffs have not satisfied Rule 9(b). The Petition identifies who made the representation (Lincoln), what it said, and where it appeared (one of Lincoln's marketing materials). Doc. No. 1-1 ¶ 26. But the Petition does not allege when Lincoln made the representation, or whether, when, and how any Plaintiff received it. *See id.* ¶¶ 25–26. Those omissions matter because a claim under Section 17.46(b) requires a deceptive act "relied on by a consumer to the consumer's detriment." TEX. BUS. & COM. Code § 17.50(a)(1)(B).

The Court therefore **dismisses without prejudice** Plaintiffs' Section 17.46(b)(5) claim. "Dismissal for failure to comply with Rule 9(b) is almost always with leave to amend." *Summer*, 664 F.2d at 971 (citation modified). Plaintiffs have requested leave, *see* Doc. No. 43 at 38–39, and nothing before the Court suggests that amendment would be futile. The Court therefore **grants leave to amend**: Plaintiffs

may file an amended complaint repleading their Section 17.46(b)(5) claim, to the extent it rests on the "partnership" representation, **within 21 days of this Order**.

### D. Common Law Fraud

The Court has dismissed the DTPA claims (Count I) and the negligent misrepresentation claim (Count III) against Lincoln. The Court has also dismissed all claims against Fidelity, which disposed of Plaintiffs' aiding and abetting fraud claim (Count IV). All that remains is Plaintiffs' claim against Lincoln for common law fraud (Count II), which the Court takes up now.

Plaintiffs' fraud claim rests on the same misrepresentations discussed above. Plaintiffs claim Lincoln's representations that Lincoln and Fidelity had a "partnership" and that the Index would include an equity component of 125 dividend stocks amounted to fraud. Doc. No. 1-1 ¶ 52. Plaintiffs claim these fraudulent misrepresentations induced them to purchase the annuities, which caused financial injury. *Id.* ¶ 53. In its Motion, Lincoln counters that Plaintiffs have not pled the fraud claim with particularity, Doc. No. 13 at 28–30; that Plaintiffs have not pled the knowledge and intent that fraud requires, *id.* at 27–28; and that Plaintiffs could not have justifiably relied on the alleged misrepresentations, *id.* at 26. In their response, Plaintiffs claim they have satisfied Rule 9(b), and in the alternative, seek leave to amend. Doc. No. 43 at 38–39.

The Court agrees with Lincoln and finds that Plaintiffs have not pled fraud with particularity. As to the partnership representation, the claim fails for the same reason

as the Section 17.46(b)(5) claim: the Petition does not allege when Lincoln made the representation, or whether, when, and how any Plaintiff received it. Plaintiffs' remaining allegations also are deficient. For instance, while Plaintiffs mention that Mr. Kattmann, an internal marketing consultant, "made several oral representations to Henry Morgan," Doc. No. 1-1 ¶ 32, Plaintiffs do not allege when he made them. Furthermore, as Lincoln notes, "in cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)). Such details are missing from the Petition.

The Court **dismisses without prejudice** Plaintiffs' common law fraud claim (Count II) because it does not comply with Rule 9(b). Because the Court dismisses on this ground, it does not reach Lincoln's alternative arguments challenging Plaintiffs' common law fraud claim. The Court also **grants** Plaintiffs **leave to amend** their Petition to comply with Rule 9(b). *See Summer*, 664 F.2d at 971. Plaintiffs may file an amended complaint repleading their common law fraud claim **within 21 days of this Order**. Furthermore, because the Court has now disposed of all of Plaintiffs' claims, the Court **denies as moot** the remaining arguments presented in Lincoln's Motion to Dismiss.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Strike (Doc. No. 41). The Court **GRANTS** the Motion to Strike to the extent that, in deciding Lincoln's Motion to Dismiss, the Court does not consider pages 093–101, 168–75, 246–53, 318–25, 387–94, 448–55, 521–28, 605–13, 676–81, and 733–40 of Lincoln's appendix (Doc. No. 14). The Court **DENIES** the Motion to Strike to the extent it asks the Court to strike those pages from the record.

The Court **GRANTS** Fidelity's Motion to Dismiss (Doc. No. 15) for lack of personal jurisdiction and **DISMISSES WITHOUT PREJUDICE** all of Plaintiffs' claims against Defendants FMR LLC and Fidelity Product Services LLC, including the negligent misrepresentation claim against Fidelity (Count III) and the aiding and abetting fraud claim (Count IV). The Court **DENIES** Plaintiffs' request for jurisdictional discovery and **DENIES AS MOOT** Fidelity's alternative motion to dismiss under Rule 12(b)(6).

The Court **GRANTS** Lincoln's Motion to Dismiss (Doc. No. 12). The Court **DISMISSES WITH PREJUDICE** as time-barred Plaintiffs' DTPA claims (Count I) under Sections 17.46(b)(6), 17.46(b)(12), and 17.50(a)(3), as well as Plaintiffs' Section 17.46(b)(5) claim to the extent it rests on the representation that the Index would always include an equity component of 125 stocks. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Section 17.46(b)(5) claim to the extent it rests on the representation that Lincoln and Fidelity were partners, as well as Plaintiffs' common law fraud claim (Count II), for failure to plead with the particularity Rule 9(b)

requires. The Court also **DISMISSES WITHOUT PREJUDICE** Plaintiffs' negligent misrepresentation claim against Lincoln (Count III) as time-barred.

The Court **GRANTS** Plaintiffs leave to amend. **Within 21 days of this Order**, Plaintiffs may file a single amended complaint that (1) repleads jurisdictional facts supporting their claims against Fidelity; (2) repleads their Section 17.46(b)(5) claim against Lincoln, to the extent it rests on the "partnership" representation, with the particularity Rule 9(b) requires; (3) repleads their common law fraud claim against Lincoln with the particularity Rule 9(b) requires; and (4) repleads their negligent misrepresentation claim against Lincoln, including any facts supporting fraudulent concealment, with the particularity Rule 9(b) requires. Plaintiffs may not replead any claim the Court has dismissed with prejudice.

**SO ORDERED.**

Signed November 9th, 2026.

ED KINKEADE
UNITED STATES DISTRICT JUDGE